

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>En interés del menor C.L.R.<br><br>    Peticionaria<br>_____<br>El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>En interés del menor A.V.L.<br><br>    Peticionario | Certiorari<br><br>2010 TSPR 20<br><br>178 DPR ____ |

Número del Caso: CC-2009-313
                 CC-2009-317

Fecha: 17 de febrero de 2010

Tribunal de Apelaciones:

        Región Judicial de Aguadilla, Panel IX

Juez Ponente:
        Hon. Carlos Rivera Martínez

Abogados de la Parte Peticionaria:

        Lcda. Eileen N. Díaz Ortiz

        Lcdo. Rafael Juarbe Pagán
        Lcda. Marisela Pérez Reisler

Oficina del Procurador General:

        Lcda. Zaira Z. Girón Anadón
        Subprocuradora General

Abogados de Amicus Curiae:

        Lcdo. Carlos del Valle Cruz
        Lcdo. Francis Daniel Nina Estrella

Materia: Mediación en Caso de Menores

Este documento constituye un documento oficial del  Tribunal Supremo que está sujeto a los cambios y correcciones del pr  oceso de compilación y publicación oficial de las decisiones   del Tribunal. Su distribución electrónica se hace como un servici  o público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico | | |
| Recurrido | | |
| En interés del menor C.L.R. | CC-2009-313 | |
| Peticionario | | |
| | consolidados | Certiorari |
| El Pueblo de Puerto Rico | CC-2009-317 | |
| Recurrido | | |
| En interés del menor A.V.L. | | |
| Peticionario | | |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 17 de febrero de 2010.

> *"El Sistema de Justicia Juvenil tiene ciertas ventajas en comparación con el Sistema Criminal de adultos, que permite una mayor efectividad en la intervención con el individuo. **El primero tiene todo un andamiaje creado por ley, encaminado a fortalecer los procesos de seguimiento de las medidas condicionales (probatorias) o desvío para el logro de la rehabilitación.**"*[1]

El presente caso nos brinda la oportunidad de analizar por primera vez la aplicabilidad del Reglamento de métodos alternos para la solución de conflictos de este Tribunal en los casos iniciados al amparo de la Ley de Menores, Ley Núm. 88 del 9 de julio de 1986, 34 L.P.R.A. secs. 2201-2238.

---

[1] L. Pérez Pérez, *Protegiéndolos de la droga y la delincuencia*, San Juan, Ed. Situm, 2009, pág. 7. (Énfasis suplido.)

**I**

El 2 de diciembre de 2008 se presentaron quejas en interés de los menores C.L.R. y A.V.L. quienes para esa fecha contaban con 14 y 13 años de edad respectivamente. La falta imputada a cada uno de los menores consistió en la infracción del artículo 198 del Código Penal de Puerto Rico (Robo). Particularmente, en las quejas se alegaba que los menores C.L.R. y A.V.L., actuando en común acuerdo y mediando fuerza e intimidación, le arrebataron un bulto a la también menor de edad D.M.H., de donde sacaron su cartera y se apropiaron de siete dólares ($7.00), sustrayéndolos de su inmediata presencia y en contra de su voluntad. Esto, luego que, alegadamente, le pidieran cincuenta centavos ($0.50) para comprar cigarrillos y ésta no se los dio, ya que el dinero era producto de una venta de chocolates de la clase de economía doméstica.

Durante la celebración de la vista de causa probable para presentar las querellas, celebrada el 16 de diciembre de 2008, los abogados de defensa de los menores solicitaron al Tribunal de Primera Instancia que el caso fuera referido a un proceso de mediación. El Procurador de Menores se opuso a dicha solicitud argumentando que la falta imputada a los menores (robo) no cualificaba para un proceso de mediación, ya que ésta corresponde a un delito de naturaleza grave.

Luego de considerar los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución mediante la cual ordenó a las partes comparecer ante la Oficina de Mediación de Mayagüez. En su resolución, el foro primario expresó que había efectuado su determinación luego de consultar con la Oficina de Mediación, examinar la posición de los padres de los menores y al considerar que era el primer proceso ante el Tribunal de Menores al cual se exponían ambos menores. A su vez, dicho foro citó en apoyo a su determinación el artículo 7.04 del Reglamento de métodos alternos para la solución de conflictos, y expresó que su decisión respondía al interés de los menores y de la justicia. En vista de lo anterior el foro primario ordenó a las partes acudir a mediación el 8 de abril de 2009.

Inconforme, el Procurador de Menores presentó una oportuna moción de reconsideración. Alegó que la falta imputada a los menores era una de naturaleza grave, clasificada Clase III por la Ley de Menores, la cual ni tan siquiera cualificaba para un programa de desvío o medida dispositiva nominal. En vista de lo anterior, sostuvo **que referir el caso al proceso de mediación no cumpliría con el propósito del Reglamento de métodos alternos para la solución de conflictos ni con el fin de la Ley de Menores de proveer tratamiento y supervisión al menor a través de una medida de libertad condicional o**

**custodia**. El Tribunal de Primera Instancia denegó la moción de reconsideración.

Así pues, la Procuradora General de Puerto Rico presentó un Recurso de *certiorari* ante el Tribunal de Apelaciones. Dicho foro apelativo revocó la determinación del Tribunal de Primera Instancia. Concluyó que según las disposiciones de la Ley de Menores, por ser la falta imputada a los menores C.L.R. y A.V.L. una de Clase III, éstos no podrían ser referidos a un procedimiento de desvío. Por consiguiente, el Tribunal de Apelaciones devolvió el caso al foro de instancia para la continuación de los procedimientos.

Inconformes con este resultado, C.L.R. y A.V.L. presentaron oportunamente Recursos de *certiorari* ante este Tribunal para que revocásemos la sentencia del Tribunal de Apelaciones. Además, solicitaron la paralización de los procedimientos a nivel de instancia mediante sus respectivas mociones de auxilio de jurisdicción. El 21 de abril de 2009 emitimos dos resoluciones mediante las cuales denegamos la expedición de cada uno de los recursos. Sin embargo, ante una oportuna moción de reconsideración presentada por el menor C.L.R., el 8 de mayo de 2009 ordenamos la paralización de los procedimientos y le concedimos a la Procuradora General un término de quince (15) días para que mostrara causa por la cual no debíamos expedir el auto y revocar la determinación del Tribunal de

Apelaciones. El 11 de mayo de 2009, adoptamos el mismo curso de acción en relación con la moción de reconsideración presentada por el menor A.V.L. Además, ordenamos la consolidación de los casos.

El 26 de mayo de 2009, la Procuradora General compareció mediante su escrito en cumplimiento de nuestra orden de mostrar causa. Posteriormente, el 29 de mayo de 2009, autorizamos la intervención de los profesores Carlos Del Valle Cruz y Francis Daniel Nina Estrella como amigos de la corte. Así pues, habiendo éstos comparecido mediante escrito, concedimos un término a la Procuradora General, según solicitado, para expresar su posición en relación con el mismo.

Contando con la comparecencia de las partes según expuesta en sus respectivos escritos, estamos en posición de resolver.

## II
### *Naturaleza y Objetivos de la Ley de Menores*

La Ley de Menores, *supra,* reglamenta los procedimientos investigativos, judiciales y ejecutivos en los casos de menores que incurren en conducta constitutiva de delito, según tipificada en el Código Penal o en las leyes especiales. Como toda ley especial, "sus disposiciones aplicarán con preferencia a otras leyes, y en caso de conflicto prevalecerán los principios

especiales" que ésta enmarca.[2] Esta ley derogó la anterior Ley de Menores del 1955 introduciendo un cambio en el enfoque filosófico, de uno penal, a uno de fines duales, esto es, rehabilitación y protección de la sociedad; y a la vez que le garantiza derechos a los menores, le exige responsabilidad penal por sus actos delictivos.[3]

La filosofía, así como los propósitos de la actual Ley de Menores, *supra*, se explican en detalle en su Exposición de Motivos:

> [E]sta ley adopta como marco filosófico del Sistema de Justicia Juvenil, el humanismo dentro de un enfoque ecléctico de acción e intervención, donde se compatibilicen la propuesta rehabilitadora y el poder y responsabilidad posible inherente al Estado de brindarle toda oportunidad rehabilitativa, **así como exigirle al menor un quantum de responsabilidad para dirigir sus actos y responder por éstos**. (Énfasis nuestro).

Además, al final de esta Exposición de Motivos se señala lo siguiente:

> Toda ayuda al menor, que propenda a su rehabilitación, **debe concientizarlo de la importancia del acto cometido llevándolo a percatarse de éste, sus implicaciones, la responsabilidad individual y comunitaria envuelta, donde se propicie a su vez respeto a la ley existente**. El tratamiento habilitador o rehabilitador que se le preste **debe cristalizar mediante objetivos y actividades**

---

[2] Véanse, el artículo 1 de la Ley de Menores de Puerto Rico, 34 L.P.R.A. sec. 2201 y los artículos 11 y 12 (a) del Código Penal de Puerto Rico, 33 L.P.R.A. secs. 4639-4640.

[3] D. Nevares Muñiz, Derecho de Menores, 6ta. ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2009, pág. 4.

> **tangibles que han de ser alcanzados por el esfuerzo genuino de las autoridades que tienen a cargo su diseño y ejecución.** (Énfasis nuestro).

El artículo 2 de la Ley de Menores, *supra*, expone los tres propósitos que ésta persigue, los cuales "deben orientar en el análisis e interpretación de la misma, por cuanto constituyen la expresión auténtica del legislador de los objetivos de la ley."[4] Entre estos propósitos se encuentra el de "proteger el interés público tratando a los menores como personas necesitadas de supervisión, cuidado y tratamiento, **a la vez que se le exige responsabilidad por sus actos**".[5] Con relación a este propósito, la Dra. Nevares Muñiz nos comenta que el objetivo es "protege[r] el interés de la comunidad al reconocer que al menor delincuente debe proveérsele supervisión y tratamiento, pero también exigirle responsabilidad por sus actos si éstos infringen las leyes penales".[6]

Los procedimientos de menores han adquirido "matices de naturaleza punitiva que van más allá del enfoque meramente rehabilitador y paternalista de la [ley de

---

[4] Nevares Muñiz, op. cit., pág. 5.

[5] Art. 2 de la Ley de Menores, *supra*, 34 L.P.R.A. Sec. 2202 (Énfasis suplido).

[6] Nevares Muñiz, op. cit., pág. 6

1955]".[7] La Ley de Menores actual adoptó "un enfoque ecléctico de acción e intervención en el cual se armoniza la responsabilidad de *parens patriae* del Estado, en cuanto a la rehabilitación de los ofensores, **con el deber de éstos de responder por sus actos**".[8] Además, "[e]l castigo es de transcendental importancia en nuestro Sistema de Justicia Juvenil. **La ley de menores de Puerto Rico, parece reconocer que sin castigo no puede haber un proceso de rehabilitación efectivo**".[9] Por castigo, nos referimos a ese *quantum* de responsabilidad que la Ley de Menores, supra, impone a cada menor.

> La evasión de responsabilidad de los ofensores juveniles sobre su vida, sus actos, y las personas con quienes conviven ha sido en muchos casos la razón para haber incurrido en conducta delictiva o antisocial. **Por eso la firmeza con que se impone el castigo es de suma trascendencia, pues éste tiene que percibir en el sistema autoridad y constancia en sus determinaciones. La falta de firmeza del juez, el trabajador social o el encargado de la supervisión del castigo, sería detrimental en su proceso de rehabilitación.**[10]

Por otra parte y aunque hemos sido consistentes en señalar los "matices de naturaleza punitiva" y no

---

[7] Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990, 997 (1992); Pueblo v. Ríos Dávila, 143 D.P.R. 687, 699 (1997); Pueblo en interés G.R.S., 149 D.P.R. 1, 12 (1999).

[8] Pueblo en interés menor G.R.S., *supra*, pág. 11; Pueblo en interés menor R.G.G., 123 D.P.R. 443 (1989) (Énfasis suplido).

[9] L. Pérez, *op cit.* pág. 21.

[10] Íd., pág. 22.

"paternalista" de la actual Ley de Menores, también hemos sido consistentes al puntualizar que los procedimientos al amparo de esta Ley **no son de naturaleza criminal**.[11] De hecho, y a tenor con los propósitos de esta Ley, su propio artículo 37(a) especifica que "[l]os procedimientos y las órdenes o resoluciones del juez bajo esta ley **no se considerarán de naturaleza criminal**".[12]

**La naturaleza del proceso en asuntos de menores es distinta a la naturaleza del proceso en la esfera penal, aunque sus procedimientos sean parecidos.** La naturaleza del proceso penal es una punitiva, esto es, va dirigida principalmente a que el convicto pague su deuda con la sociedad. La Dra. Nevares Muñiz define el Derecho Procesal Penal como "aquella área del derecho público constituida por el conjunto de disposiciones estatutarias y decisiones jurisprudenciales, cuyo propósito es regular el proceso mediante el cual el Estado identifica, enjuicia y penaliza a la persona que ha cometido un delito".[13] Con relación a esto, la Dra. Ortega Vélez señala de igual forma que el Derecho Penal "[s]e caracteriza por prever las sanciones como forma de evitar

---

[11] Pueblo en interés menor A.L.G.V., res. el 8 de mayo de 2007, 2007 T.S.P.R. 85, 170 D.P.R. __; Pueblo v. Suárez, 167 D.P.R. 850, 857 (2006); Pueblo en interés menores A.L.R.G. y F.R.G., *supra*, pág. 996; Pueblo en interés menor G.R.S., *supra*, pág. 10; Pueblo en interés menor N.O.R., 136 D.P.R. 949, 955 (1994) (Énfasis suplido).

[12] Art. 37(a) de la Ley de Menores, *supra*, 34 L.P.R.A. sec. 2237 (Énfasis suplido).

[13] D. Nevares Muñiz, Sumario de Derecho Procesal Penal Puertorriqueño, 6ta ed., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2001, pág. 1.

los comportamientos que el Derecho juzga especialmente peligrosos -delitos-. **Así, el ordenamiento reacciona ante la violación generando un mal al infractor como pago a su comportamiento ilícito".**[14]

En cambio, y como ya señalamos, la naturaleza del proceso en los asuntos de menores es uno dirigido en primer lugar a la rehabilitación, tratando a los menores "como personas necesitadas de supervisión, cuidado y tratamiento", a la vez que se les exige "un quantum [una porción] de responsabilidad para dirigir sus actos y responder por ellos".[15] En los procesos de asuntos de menores nos encontramos ante "un procedimiento especial donde los delitos se denominan faltas, el juicio se denomina vista adjudicativa y la sentencia, medida dispositiva".[16] Un *proceso especial* en el cual el menor transgresor (el término *"transgresor"* sustituye al término *"convicto"* de la esfera penal),[17] tiene derecho a recibir tratamiento individualizado que propenda a sus necesidades y eventual rehabilitación.[18] Un *proceso especial* en donde el menor no puede ser detenido,

---

[14] R.E. Ortega Vélez, Código Penal de Puerto Rico (2004), 1ra. ed., San Juan, Ediciones Chrisely, 2007, pág. 5 (Énfasis nuestro).

[15] Exposición de Motivos de la Ley de Menores, *supra.*

[16] Pueblo v. Vargas, 120 D.P.R. 404, 412 (1998); Pueblo v. Ríos Dávila, *supra*; Pueblo en interés menor J.M.R. 147 D.P.R. 65, 72 (1998).

[17] 34 L.P.R.A. sec. 2203(t).

[18] 34 L.P.R.A. sec. 2235(b); 2237(a); véase además, Art. II, Sec. 15, Constitución E.L.A., L.P.R.A., Tomo I.

transportado o recluido en instituciones para adultos.[19]

Un *proceso especial* en el cual todos los asuntos son confidenciales, por lo que el público en general no tiene acceso, a menos que los padres, encargados o el representante legal del menor consientan que el asunto se ventile públicamente.[20] Un *proceso especial* en el que no se admite la renuncia por parte de un menor a cualquiera de los derechos constitucionales que lo cobijan, si no están presentes sus padres o encargados.[21]

Además, la Ley de Menores dispone "[q]ue el historial del menor ante el Tribunal no constituirá impedimento para cualquier solicitud de empleo, puesto o

---

[19] Íd.

[20] 34 L.P.R.A. sec. 2208; 34 L.P.R.A. Ap. I-A, R. 13.9. En Pueblo en interés menores A.L.R.G. y F.R.G., 132 D.P.R. 990, 997 (1993), claramente nos expresamos al respecto al señalar que:

> Por ser éste un procedimiento especial, el legislador optó por ampararlo bajo el manto de la confidencialidad, de manera que se evite al máximo cualquier daño al menor transgresor por el estigma que acarrea la imputación de un acto delictivo, conforme a la filosofía proteccionista que permea dicha Ley. Esta corriente de pensamiento sostiene que la identificación del menor transgresor ante la sociedad evita que dicha persona logre su rehabilitación y su saludable integración a la libre comunidad. Una vez se detecta la conducta criminal en un menor, a temprana edad, es posible moldearlo a tiempo y propiciar su desarrollo en un ciudadano cumplidor de las leyes. De ahí que nuestra legislación, en materia de menores, busque protegerlos del escrutinio público y así disminuir el daño que esto pueda causar en su autoestima. De la misma forma esto abona a su reingreso a la sociedad y a su núcleo familiar. (Énfasis suprimido y citas omitidas.)

Así pues, bajo la Ley de Menores vigente el Estado ha buscado reducir al mínimo el estigma popular que conlleva todo acto delictivo. Pueblo en interés menores A.L.R.G. y F.R.G., *supra*, pág. 998.

[21] 34 L.P.R.A. sec. 2211.

cargo en el servicio público."[22] Incluso, el certificado de antecedentes penales que emite la policía no provee información respecto a faltas cometidas por un menor. Por ser un *proceso especial* y distinto al penal, cualquier referencia a una sentencia impuesta a un menor por la comisión de una falta, es nula y debe eliminarse del récord penal.[23] Tampoco puede presentarse contra un menor en un tribunal de jurisdicción ordinaria –en otro procedimiento civil o penal– la evidencia presentada contra ese menor en una vista adjudicativa ante el Tribunal de Menores.[24]

Por ser un proceso diferente al penal, la Ley de Menores requiere que todo expediente de un menor en poder de la policía tiene que ser destruido al cumplir éste los dieciocho (18) años de edad, ni podrán considerarse las faltas cometidas por éste a los fines de imputarle como adulto una sentencia en grado de reincidencia.[25] Ni siquiera los expedientes judiciales pueden archivarse juntos, pues el artículo 37(d) de la Ley de Menores señala que "los expedientes en los casos de menores se mantendrán separados de los de adultos", y serán confidenciales.[26]

---

[22] 34 L.P.R.A. sec. 2237(a).

[23] Correa Negrón v. Pueblo, 104 D.P.R. 286 (1975).

[24] 34 L.P.R.A. sec. 2209.

[25] 34 L.P.R.A. sec. 2237(e) y 33 L.P.R.A. Sec. 4710(d).

[26] 34 L.P.R.A. sec. 2237(d).

Por último, pero extremadamente pertinente a la controversia que nos ocupa, el artículo 38 de la Ley de Menores[27] establece que las disposiciones de esa Ley se regirán, **no por las Reglas de Procedimiento Criminal** –que pertenecen y fueron redactadas para el proceso penal–, **sino por las *Reglas de Procedimientos para Asuntos de Menores*** (Reglas). Éstas reglas fueron redactadas específicamente para este proceso, adoptadas por este Tribunal Supremo y aprobadas por la Legislatura.[28] En armonía con lo anterior las propias Reglas establecen que:

> ...regirán todos los procedimientos que se inicien a partir de la vigencia de la Ley Núm. 88 de 9 de julio de 1986, denominada "Ley de Menores de Puerto Rico", incluyendo aquellas que estén pendientes a la fecha de vigencia de estas reglas siempre que su aplicación no perjudique derechos sustantivos. Se interpretaran de acuerdo a los propósitos que inspira la Ley de Menores, secs. 2201 et seq. de este título, y de modo que garanticen una solución justa, rápida y económica de todos los asuntos.[29]

De todo lo anterior, podemos colegir en primer lugar que nuestra Ley de Menores se encuentra predicada en una filosofía que exige responsabilidad al menor por la falta cometida, mientras expresamente distingue el proceso de

---

[27] 34 L.P.R.A. sec. 2238.

[28] Las Reglas para Asuntos de Menores fueron aprobadas por este Tribunal Supremo el 31 de diciembre de 1986 y remitidas a la Asamblea Legislativa, la cual le hizo varias enmiendas siendo aprobadas finalmente mediante la Ley Núm. 33 de 19 de junio de 1987.

[29] 34 L.P.R.A. Ap. I-A, Regla 1.2.

uno principalmente punitivo. En segundo lugar, es evidente que la naturaleza del proceso para menores es distinta a la del proceso penal. Como en otras ocasiones hemos expresado, los procedimientos de menores gozan de una naturaleza *sui generis*, por lo que los mismos no constituyen propiamente causas criminales.[30]

Es por eso que un adulto en un proceso penal puede recibir una condena que lo mantenga en prisión prácticamente el resto de su vida, mientras que un menor en un proceso de menores sólo extinguirá su medida dispositiva ("su sentencia"), como mucho, hasta los 21 años de edad.[31] Tal diferencia es producto de la filosofía o la naturaleza que entraña cada proceso: el adulto, hablando filosóficamente, tiene que pagar su deuda con la sociedad –proceso penal–[32], mientras que al menor se le provee la oportunidad de rehabilitarse y "comenzar de nuevo" al cumplir su mayoría de edad. **De hecho, la medida dispositiva de un joven incurso puede cesar ("extinguió su sentencia"), en el momento mismo en que se prueba su rehabilitación, sin importar la gravedad de la falta ("el delito") que hubiese cometido, ni el tiempo que le**

---

[30] Pueblo en interés menor F.R.F, 133 D.P.R. 172 (1993); Pueblo en interés menores A.L.R.G. y F.R.G., *supra*, págs. 996-997.

[31] Art. 28 de la Ley de Menores, *supra*, 34 L.P.R.A. sec. 2228.

[32] Esto no implica que no se debe atender el mandato constitucional que establece, como política pública del Estado, el que a la persona que es juzgada y convicta como adulto, se le provea el tratamiento adecuado para hacer posible su rehabilitación moral y social. Véase, Art. VI, Sec. 19. Const. E.L.A., Tomo 1.

**restara por cumplir.[33] Esa alternativa no está de ninguna manera disponible para un adulto.**

De igual forma, la figura de la víctima es tratada de manera distinta en ambos procesos. En el proceso penal la víctima puede ser resarcida a costa de un sobreseimiento total de los cargos en contra de la persona acusada.[34] **En cambio, en el proceso contra un menor tal resarcimiento de la víctima no podría darse a expensas de que el menor se le prive de recibir supervisión, cuidado y tratamiento -por las autoridades que tienen a cargo su diseño y ejecución-, pues tal privación iría en contra de los propósitos expresos de la Ley de Menores.[35]**

### III

#### A. *Naturaleza y propósito del proceso de mediación en Puerto Rico*

La doctora Mildred E. Negrón Martínez expresa que, "[h]istóricamente, las sociedades han ensayado y utilizado diferentes medios para atender los conflictos, bien para resolverlos, evitarlos o reprimirlos".[36] Por consiguiente,

> [e]l interés que la mediación y otros métodos de resolución de conflictos han despertado durante los últimos años en los

---

[33] Art. 28 de la Ley de Menores, *supra*, 34 L.P.R.A. sec. 2228.

[34] Regla 246 de Procedimiento Criminal, 34 L.P.R.A. Ap. II R. 246.

[35] Art. 2 de la Ley de Menores, *supra*; Véase además, la exposición de motivos de dicha ley.

[36] M.E. Negrón Martínez y otros, Un Modelos Puertorriqueño de Mediación de Conflictos, 1era ed., San Juan, Lexis-Nexis de Puerto Rico, 2001, pág. 1.

> países occidentales, particularmente en aquéllos del continente americano, tiene su origen en diversos factores.(…) La efervescencia política de las décadas de 1960 y 1970 en los Estados Unidos sirvió de marco social a un sinnúmero de conflictos sociales que propiciaron un replanteamiento sobre las formas de enfrentar y resolver conflictos. Asimismo, las críticas crecientes a los sistemas judiciales destacaban la inaccesibilidad de los tribunales para varios sectores de la población civil…[37]

Es en este contexto que surge la opción de los métodos alternos de resolución de conflictos **como una alternativa a la formalidad, el costo y la lentitud de los procedimientos legales tradicionales.**

En Puerto Rico, desde la década de 1970, la Rama Judicial ha venido implantando diversos mecanismos con el objetivo de remediar algunas dificultades relacionadas con el volumen y la administración de casos.[38] En el año 1980, el Secretariado de la Conferencia Judicial y Notarial propuso la implantación de alternativas adicionales al sistema adversativo puertorriqueño, entre las cuales incluyó la creación de programas adscritos al sistema judicial y regulados por el Tribunal Supremo, que permitieran la solución de conflictos entre ciudadanos, entre los cuales se encontraba la mediación.[39] Esta sugerencia estuvo fundamentada en los hallazgos de una

---

[37] Íd., págs. 2-3

[38] Íd., pág. 16.

[39] Íd., págs. 16-17; Véase además, Informe del Secretariado de la Conferencia Judicial de Puerto Rico sobre métodos alternos para la solución de disputas, octubre de 1980.

investigación realizada por el propio Secretariado de la Conferencia Judicial que mostraba una tendencia de aumento en la litigación de casos, a la vez de un atraso en el manejo de algunos casos en los tribunales.[40] De manera que la idea de incorporar a nuestro ordenamiento los métodos alternos para la solución de conflictos está estrechamente ligada al problema de la congestión de calendarios de los tribunales de primera instancia y, consecuencia de esto, la intención o empeño de aligerar la resolución de los casos pendientes ante dichos foros.[41]

### B.    Génesis y objetivos de la Ley Núm. 19 de 22 de septiembre de 1983

Como secuela de la necesidad de aligerar la resolución de casos en nuestros tribunales, en el año 1980 el Secretariado de la Conferencia Judicial recomendó la aprobación de legislación que estableciera ciertas bases conceptuales y asignara fondos a la Rama Judicial para la implantación de métodos alternos para la solución de disputas. Así, en el año 1983, la legislatura aprueba la Ley Núm. 19 de 22 de septiembre.[42] Con la aprobación de esta Ley la Asamblea Legislativa reconoció la importancia y utilidad que los métodos alternos de solución de

---

[40] Íd.

[41] J. Trías Monge, "El Estado de la Judicatura, 1979-80", en Sociedad, Derecho y Justicia, 1era ed., San Juan, Ed. U.P.R., 1986, pág. 178.

[42] 4 L.P.R.A. sec. 532-532e.

conflictos representan para los esfuerzos por reducir la carga de trabajo de los distintos componentes del sistema de justicia puertorriqueño y convalidó las iniciativas de la Rama Judicial en esa dirección.[43] La Asamblea Legislativa además instruyó a este Tribunal a adoptar las reglas necesarias para la operación de los programas que servirían como centros informales de resolución de disputas.[44]

Ahora bien, con relación a la naturaleza de los casos que podrían ser referidos a los centros cuyas creación se autorizaba, el artículo 4 de la Ley Núm. 19, *supra*, es meridianamente claro: "los centros o programas que se establezcan proveerán para la pronta resolución de determinados asuntos de naturaleza civil o **criminal** de manera informal, sencilla y sin la autorización de procedimientos adversativos".[45]

En cumplimiento con el mandato promulgado por la Ley Núm. 19, *supra*, este Tribunal aprobó el Reglamento de métodos alternos para la solución de conflictos (Reglamento)[46]. Este Reglamento declara como política

---

[43] Exposición de Motivos, Ley Núm. 19 de 22 de septiembre de 1983, 1983 Leyes de Puerto Rico 422-423.

[44] 4 L.P.R.A. sec. 532-532ª

[45] 4 L.P.R.A. 532c

[46] Este reglamento fue aprobado mediante resolución del 25 de junio de 1998, y enmendado posteriormente mediante resolución del 4 de marzo de 2005. Véase, *In re* Aprobación del Reglamento de Métodos Alternos para la Solución de Conflictos, 1998 T.S.P.R. 79; *In re* Enmiendas al Reglamento de Métodos Alternos para la Solución de Conflictos, 164 D.P.R. 45 (2005).

pública de la Rama Judicial "fomentar la utilización de mecanismos complementarios al sistema adjudicativo tradicional con el fin de impartir justicia en una forma más eficiente, rápida y económica".[47]

En el contexto de lo que nos es pertinente, el Reglamento define la mediación como un "proceso de intervención, no adjudicativo, en el cual un [interventor neutral] ayuda a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable".[48] Además, la Regla 7.01 añade que "la mediación tiene como propósito promover la participación de personas en la solución de sus conflictos y que las partes involucradas asuman responsabilidad en el cumplimiento de los acuerdos".[49]

Por último, la Regla 7.02 del Reglamento[50] establece cuáles casos son elegibles para este mecanismo alterno, señalando que "[s]erán elegibles para mediación los casos civiles y los **casos criminales** de naturaleza menos grave, que puedan transigirse **de acuerdo con las Reglas de Procedimiento Criminal.**

En conclusión, la naturaleza de la Ley Núm. 19 de 22 de septiembre de 1983, *supra,* así como del Reglamento de métodos alternos para la solución de conflictos de este

---

[47] 4 L.P.R.A. Ap. XXIX R. 1.01.

[48] 4 L.P.R.A. Ap. XXIX R. 1.03(c).

[49] 4 L.P.R.A. Ap. XXIX R. 7.01(b).

[50] 4 L.P.R.A. Ap. XXIX R. 7.02(a)

Tribunal, encierran cuatro objetivos; a saber: impartir **justicia** en una forma más **eficiente**, **rápida** y **económica**.[51] Impartir una justicia más eficiente, rápida y económica, siendo estos tres últimos los objetivos a destacarse- hablando contextualmente- porque, impartir justicia, debe ser el objetivo o propósito general de cualquier organismo adscrito a la Rama Judicial.

De manera que lo que se busca es que, de una manera informal, se resuelvan aquellos asuntos que, por su **naturaleza**, puedan obviar el proceso ordinario o tradicional de los tribunales, consiguiendo una justicia más rápida y menos costosa, a la vez que se ayuda a descongestionar los calendarios de nuestras salas de instancia.

**IV**

¿Puede referirse a mediación un caso que se encuentra sometido ante la consideración de un Tribunal de Menores? Antes de discutir la contestación a esa pregunta, debemos comenzar señalando que existen varias jurisdicciones en los Estados Unidos en las que los procesos de mediación han probado ser de gran utilidad en casos de delincuencia juvenil, particularmente en aquellos primeros ofensores.[52]

---

[51] Véase, Regla 1.01 ("Declaración de Política Pública") del Reglamento de Métodos Alternos para la Solución de Conflictos, *supra*.

[52] S.A. Beauregard, <u>Court-Connected Juvenile Victim-Offender Mediation: An Appealing Alternative for Ohio's Juvenile Delinquents</u>, 13 Ohio St. J. on Disp. Resol. 1005 (1998); Hon. R. Bennet Burkemper,

La mediación que se utiliza en los casos de delincuencia juvenil en estos estados, como en otros países, es aquella que forma parte de los programas basados en la llamada *justicia restaurativa*.[53] Dicha justicia restaurativa ha sido definida como un "proceso por el cual todas las partes que tienen un interés en una determinada ofensa se juntan para resolverla colectivamente y para tratar sus implicaciones de futuro".[54]

Bajo esta teoría tanto las víctimas como los ofensores asumen una función activa en la resolución del conflicto y en la negociación de un acuerdo que pretende restablecer las pérdidas materiales y psicológicas de la víctima, mientras que inculca en el ofensor el "impacto humano" de su conducta criminal.[55] Por su parte, la responsabilidad del ofensor reside en aceptar la responsabilidad por sus acciones y en el papel activo que debe jugar en el proceso de restitución.[56] A base de esta teoría se han creado diversos programas, entre los que

---

Jr., Restorative Justice in Missouri's Juvenile System, 63 J. Mo. B. 128 (2007).

[53] Íd.; M. Liebmann, Restorative justice: how it works, 1era ed., Londres, Jessica Kingsley Publishers, 2007, pág. 25.

[54] L.F. Gordillo Santana, La justicia restaurativa y la mediación penal, 1era ed., Madrid, Ed. Iustel, 2007, pág. 72.

[55] Beauregard, *supra*, pág. 1010.

[56] Íd.

podemos mencionar, la mediación *víctima-ofensor* y las juntas comunitarias o familiares, entre otros.[57]

Fundamentados en la teoría de la justicia restaurativa, los programas de mediación *víctima-ofensor* en casos de menores se centran en la experiencia de la víctima, la necesidad de la rendición de cuentas por parte de los ofensores juveniles y la importancia de proporcionar a las partes la oportunidad de participar activamente en el proceso sancionador.[58] Además, se debe tener en cuenta que entre los propósitos fundamentales de este tipo de programas se encuentra el poder restaurar a la víctima.[59] En diversas jurisdicciones estadounidenses se ha utilizado la mediación *víctima-ofensor* en los casos de menores e incluso existen unas normas generales que pueden ser utilizadas como guía en la ejecución de estos programas.[60]

Ahora bien, en las jurisdicciones en las cuales se utiliza este tipo de mediación, los tribunales **tienen total discreción para exigir cierto nivel de capacidad, conocimientos y características personales a los**

---

[57] Véase, Liebmann, *supra,* págs. 27-28; Véase además, Beauregard, *supra*; Bennet, *supra*.

[58] Íd., pág. 1013.

[59] Íd., pág. 1012.

[60] Véase, The Institute of Judicial Administration, Center for Dispute Settlement, *National Standards for Court-Connected Mediation Program*, disponible en http://www.mbf.org/JAGWG2BADRNationalStandards.pdf (1992).

**mediadores en sus programas de mediación.**[61] Por tal razón, se ha señalado que en los casos de mediadores *víctima-ofensor* en los procesos de menores, **los requisitos deben reflejar los retos inherentes que envuelve la mediación con menores ofensores.**[62]

De manera que, tanto los defensores como los detractores de la mediación *víctima-ofensor* hacen hincapié en la importancia de la **formación adecuada** y **la creación de normas guías (***standards***) para los mediadores.**[63] Esto parece ser aún más importante en el tratamiento de niños y adolescentes.[64] **Los profesionales de la mediación requieren un mayor nivel de habilidad para utilizarla correctamente, a la luz de la necesidad de incurrir en un trauma adicional mínimo, cuando se interviene en casos de mala conducta de menores.**[65]

Por tal razón, recientemente se han llevado a cabo esfuerzos particulares por parte de varios estados de los Estados Unidos, así como por la Conferencia Nacional de

---

[61] Buauregard, *supra*, pág. 1020

[62] Íd.; véase, Bennet, supra. Por ejemplo, en el estado de Ohio, el programa fue promovido por la Corte Suprema del estado y se inició con **sesiones de entrenamiento** sobre asuntos de mediación *víctima-ofensor* **dentro del contexto del sistema de justicia de menores.** Así mismo, en el estado de Missouri, se ha utilizado este tipo de mediación en los procesos de menores mediante una **selección cuidadosa** y **preparando a ambas partes** para que el proceso sea uno **positivo y restaurador.** Beauregard, *supra*, pág. 1023, 1026-1027; Bennet, *supra*, pág. 131.

[63] N. Lucas, Restitution, Rehabilitation, Prevention, and Transformation: Victim-Offender Mediation for First-Time Non-Violent Youthful Offenders, 29 Hofstra L. Rev. 1365, 1398 (2001)

[64] Íd.

[65] Íd.

Comisionados sobre Leyes Estatales Uniformes (*National Conference of Commissioners on Uniform State Laws*), para establecer una certificación y normas para los mediadores.[66] Además, es evidente que este tipo de mediación está palmariamente definida en las jurisdicciones en las cuales se utiliza, incluso existen algunas en las cuales la legislación estatal claramente promueve el proceso.[67]

**En vista de lo anterior, debemos concluir que la mediación utilizada en los procesos de menores en otras jurisdicciones estatales, es una que se basa principalmente en la justicia restaurativa y que se ha diseñado específicamente para atender menores. Por consiguiente, entendemos que este proceso de mediación debe diseñarse en el contexto de los procesos de menores y en concordancia con los objetivos de la Ley de Menores.**

En Puerto Rico el Negociado de Métodos Alternos para la Solución de Conflictos –adscrito a la Oficina del Juez Presidente– (Negociado), administra el Centro de Mediación de Conflictos del Tribunal General de Justicia (Centro). El Centro, a través del Negociado y en cumplimiento con el Reglamento, provee de una

---

[66] Íd.

[67] Por ejemplo en los estados de Arkansas, Colorado, Delaware, Illinois, Montana, Tennessee y Wisconsin la legislación incluye específicamente la mediación para sus procesos de menores. *Véase*, Ark. Code Ann. 9-31-404 (2009); Colo. Rev. Stat. Ann. 19-2-102 (2008); Del. Code Ann., tit. 11, 9501 (2009); 705 Ill. Comp. Stat. Ann. 405/5-310 (2009); Mont. Code Ann. 41-5-1304 (2009); Tenn. Code Ann. 16-20-101 (2009); Wis. Stat. Ann. 938.34(5r) (2009).

certificación a toda aquella persona que interesa que su nombre sea incluido en un registro de mediadores que pueden prestar sus servicios a la Rama Judicial.[68] En realidad, una certificación como mediador no es requerida en Puerto Rico, por lo que una persona puede ofrecer sus servicios como mediador sin estar certificado. Ahora bien, al igual que algunos Estados de los Estados Unidos, en Puerto Rico la certificación de mediador que otorga el Negociado es una condición obligada para que su nombre aparezca en la lista o registro de mediadores capacitados para dar servicio a la Rama Judicial.

No obstante, la capacitación que provee el propio Negociado para otorgar su certificación, **no incluye adiestramiento alguno diseñado específicamente para atender menores primeros ofensores en asuntos de delincuencia juvenil, y mucho menos en el contexto de los procesos de las salas de menores y en concordancia con los objetivos de la Ley de Menores**. De hecho, el único adiestramiento en un área especializada que se requiere como parte de los requisitos para completar la certificación de mediador, es el completar ocho (8) unidades de adiestramiento sobre manejo en casos de violencia doméstica.[69]

---

[68] Reglamento de Métodos Alternos para la Solución de Conflictos, 4 L.P.R.A. Ap. XXIX R.2.02(e).

[69] Véase la Regla 3.05 del Reglamento de certificación y educación continua relacionado con los métodos alternos para la resolución de

**V**

**Incompatibilidad de la Mediación Actual
con la Ley de Menores**

Como ya hemos resuelto, los procedimientos al amparo de nuestra Ley de Menores no son de naturaleza criminal.[70] Asimismo y como señalamos, tanto el texto de la Ley Núm. 19, *supra,* como el Reglamento de métodos alternos para la solución de conflictos, enmarcan los referidos que pueden hacerse a mediación dentro del contexto de un proceso "criminal".[71] De manera que, por el propio lenguaje de la Ley Núm. 19, así como de la Ley de Menores, es forzoso concluir que la mediación no fue incluida por el legislador en los procesos para asuntos de menores.[72] De igual manera, nuestro Reglamento de métodos alternos no incluye en su lenguaje expresión alguna que autorice la mediación en asuntos de menores.

---

conflictos, Negociado de Métodos Alternos para la Solución de Conflictos, 15 de junio de 1999, pág. 10.

[70] Pueblo en interés menor A.L.G.V., *supra*; Pueblo v. Suárez, supra; Pueblo en interés menores A.L.R.G. y F.R.G., *supra*; Pueblo en interés menor G.R.S., supra; Pueblo en interés menor N.O.R., *supra*.

[71] Art. 4 de la Ley Núm. 19, *supra*; Regla 7.02 del Reglamento de Métodos Alternos para la Solución de Conflictos, *supra.*

[72] El 8 de septiembre de 2009, se presentó en el Senado de Puerto Rico el Proyecto del Senado 1108 de la autoría del Presidente de la Comisión de lo Jurídico, Hon. Jose E. González, el cual busca incorporar la mediación a los procesos de menores. En su exposición de motivos se expresa que:

> A pesar de que los procesos judiciales que se celebr[a]n en el interés de un menor en ocasiones son referidos a mediación, **ni la Ley de Menores ni la Reglas de Procedimiento para Asuntos de Menores contemplan expresamente la posibilidad de utilizar [e]ste mecanismo como método alterno para la solución de conflictos** (Énfasis suplido).

Por todo lo antes discutido y a la luz de la normativa jurisprudencial, es claro que la naturaleza y los propósitos de la Ley de Menores no se ajustan a la naturaleza y los propósitos del mecanismo de mediación, como está hoy constituido. Al concluir lo anterior no estamos interpretando restrictivamente nuestro Reglamento de métodos alternos, negándole de esa forma —y según se alega— derechos a los menores que les reconocemos a los adultos. Más bien, lo que hacemos es reconocer la clara intención y objetivos de la Ley Núm. 19 que autoriza dicho reglamento, y siendo consistentes con la normativa jurisprudencial esbozada hasta ahora por este Tribunal en materia de asuntos de menores. Además, ¿qué sentido tendría interpretar de manera liberal un reglamento para reconocer un alegado derecho que en realidad perjudica a quien lo recibe?

Por otro lado, el Reglamento de métodos alternos para la solución de conflictos establece como parámetro para la aplicación del mecanismo de mediación en los casos criminales, los delitos que se describen en las Reglas de Procedimiento Criminal, supra. Tales delitos figuran específicamente en la Regla 246 de ese cuerpo de reglas. Sin embargo, como ya se ha señalado, los procedimientos de menores se guían, no por las Reglas de Procedimiento Criminal, si no por las Reglas de

Procedimientos para Asuntos de Menores.[73] En *Pueblo en interés del menor R.G.G.*, 123 D.P.R. 443, 463 (1989), señalamos que "de una lectura de la totalidad de las Reglas para Asuntos de Menores se desprende que dichas reglas siguen fundamentalmente las disposiciones de las Reglas de Procedimiento Criminal que regulan, en esta jurisdicción, los procedimientos criminales contra adultos".

Ahora bien, nótese que aunque en la confección de las Reglas de Asuntos de Menores se siguió fundamentalmente las disposiciones de las Reglas de Procedimiento Criminal, en las primeras, no se incluyó una regla de "transacción de faltas" que fuera análoga a la "transacción de delitos" que constituye la Regla 246 de las de Procedimiento Criminal. Así que, distinto al proceso penal –de adultos–, en las Reglas de Procedimientos para Asuntos de Menores no existe una regla que permita la transacción de una falta.[74] Concluimos entonces que, mientras el legislador ha sido muy claro al dejar plasmada su intención con relación a la posibilidad de transacción para los casos en el proceso penal, su silencio ha sido más que elocuente con relación a tal alternativa para con los procesos de menores.

---

[73] Art. 38 de la Ley de Menores, *supra.*

[74] El Art. 26 de la Ley de Menores, *supra*, hace referencia a la Ley de Vehículos y Tránsitos de Puerto Rico, abriendo la posibilidad de la transacción conforme a esa Ley, pero por infracciones de menores denominadas "faltas administrativas".

Por último y como señalamos, **actualmente nuestro Centro de Mediación de Conflictos no cuenta, como sí ocurre en otras jurisdicciones, con un programa de capacitación que le permita al Negociado certificar mediadores específicamente en el área de menores primeros ofensores en asuntos de delincuencia juvenil, y mucho menos en el contexto de los procesos de las salas de menores.**

Así pues, acceder en el caso de autos a la solicitud de los peticionarios, permitiría que los padres o encargados legales de los dos menores imputados sean los que, junto a la víctima, negocien una salida "eficiente, rápida y económica" del caso que éstos enfrentan. **Permitir que esta negociación se lleve a cabo sin la supervisión de un mediador preparado para esto y sin unas normas guías (*standards*) que provean para la supervisión, cuidado y tratamiento que deben acontecer como parte del *quantum* de responsabilidad que según la Ley estos menores deben enfrentar, sería, sin duda, hacerles un daño.**

Entendemos que la mediación puede llegar a ser -como ha ocurrido en otras jurisdicciones- un instrumento de gran beneficio en área de asuntos de menores en Puerto Rico. Como se sabe, es política pública de la Rama Judicial fomentar la utilización de mecanismos complementarios al sistema adjudicativo tradicional, como

lo son los métodos alternos para la solución de conflictos.[75]

Sin embargo, es ampliamente reconocido que los niños y los adolescentes son física, intelectual y emocionalmente diferentes a los adultos.[76] Así pues, estas diferencias redundan en conductas, análisis, juicios valorativos y reacciones disímiles en contraste con los adultos. Por tal razón, se ha expresado que: "[a]lthough these deficits do not make adolescents any less dangerous, experts have argued that **they require a specifically defined manner of adjudication and scope of punishment**".[77] Por consiguiente, si basado presumiblemente en estas diferencias el legislador diseñó un sistema de justicia especial para menores, ¿cómo hemos de exponerlos a un proceso de mediación que ha sido diseñado específicamente para adultos?

Como señala la compañera Juez, Hon. Laureana Pérez Pérez, "[e]l joven, a diferencia del adulto está en un proceso de formación y admite cambios radicales en su vida. Así también, existe en él una actitud de combatir las adversidades y reencaminarse en una dirección que le ofrezca mayor felicidad."[78] Por eso entendemos necesario, en el ejercicio de nuestro poder de *parens patrie*,

---

[75] 4 L.P.R.A. Ap. XXIX R. 1.01

[76] M. A. Corriero, Judging Children as Children: A proposal for a Juvenile Justice System, 1era ed., Philadelphia, Temple University Press, 2006, págs. 22-23.

[77] Íd., pág. 23. (Énfasis suplido.)

[78] L. Pérez, *op cit.* pág. 11.

vigilar que en tal proceso formativo no se introduzcan elementos o mecanismos no preparados o diseñados para ellos, que pudieran deformarlos en lugar de ayudarlos a reencaminarse en la dirección correcta.

## VI

Por todo lo anterior, determinamos que según el texto de los estatutos considerados y la naturaleza o filosofía que encierran, el mecanismo de mediación, como se encuentra configurado al presente, está disponible únicamente para procesos civiles y criminales y no así para asuntos de menores.

Por ende, confirmamos la sentencia del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez        Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>En interés del menor C.L.R.<br><br>    Peticionario<br>_____<br><br>El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>En interés del menor A.V.L.<br><br>    Peticionario | CC-2009-313<br><br>consolidados<br><br>CC-2009-317 | Certiorari |

**SENTENCIA**

San Juan, Puerto Rico, a 17 de febrero de 2010.

Por los fundamentos expuestos en la opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto solicitado, se confirma la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Rodríguez Rodríguez emitió Opinión Disidente a la cual se une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>Recurrido<br><br>En interés del menor<br>C.L.R.<br>Peticionario<br><br><br><br>El Pueblo de Puerto Rico<br>Recurrido<br><br>En interés del menor<br>A.V.L.<br>Peticionario | CC-2009-313<br><br><br>Cons.<br><br><br>CC-2009-317 |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la que se le une el Juez Presidente señor Hernández Denton y la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 17 de febrero de 2010

El presente caso brindaba la oportunidad de interpretar por primera vez el Reglamento de métodos alternos para la solución de conflictos de este Tribunal, 4 L.P.R.A. Ap. XXIX, y aplicar sus disposiciones a los casos iniciados al amparo de la Ley de menores, Ley número 88 del 9 de julio de 1986. 34 L.P.R.A. secs. 2201-2238. Lamentablemente una mayoría de los miembros del Tribunal, amparándose en que la naturaleza y filosofía que encierra la Ley de menores es, alegadamente, incompatible con métodos alternos de solución de conflictos, se niega a aplicarlos a estos procesos. Por ser del criterio que la mediación es una herramienta útil y necesaria en la resolución de ciertos casos iniciados al amparo de la Ley de menores, respetuosamente disiento del dictamen emitido.

## I.

El 2 de diciembre de 2008 el Procurador de Menores presentó sendas quejas en interés de los menores C.L.R. y A.V.L. quienes para esa fecha contaban con 14 y 13 años de edad, respectivamente. Imputó a cada uno de los menores una falta consistente en infracción al artículo 198 del Código Penal de Puerto Rico. Específicamente, en las quejas se alegó que los menores C.L.R. y A.V.L., actuando en común acuerdo y mediando fuerza e intimidación, le arrebataron un bulto a la también menor de edad D.M.H. y se apropiaron de siete dólares ($7.00) pertenecientes a esta última, sustrayéndolos de su inmediata presencia y en contra de su voluntad.[79]

Durante la celebración de la vista de causa probable para presentar las querellas, los abogados de defensa de los menores solicitaron al Tribunal de Primera Instancia que el caso fuera referido a un proceso de mediación. El Procurador de Menores se opuso a tal solicitud arguyendo que la falta imputada a los menores no era susceptible de ser referida a un proceso de mediación toda vez que equivalía a un delito de naturaleza grave.

Considerados los argumentos de ambas partes, el Tribunal de Primera Instancia emitió una resolución mediante la cual ordenó a las partes a comparecer ante la Oficina de Mediación de Mayagüez. El Tribunal

---

[79] La menor D.M.H. es compañera de estudio de los recurrentes.

expresó en su resolución que había efectuado su determinación luego de examinar la posición de los padres de los menores involucrados en los hechos que dieron origen al procedimiento y en atención a que se trataba del primer proceso ante el Tribunal de Menores al cual se exponían C.L.R. y A.V.L. El Tribunal también citó en apoyo de su determinación el artículo 7.04 del Reglamento de métodos alternos para la solución de conflictos y expresó que su decisión respondía al interés de los menores y de la justicia.[80]

Inconforme con el curso de acción del Tribunal de Primera Instancia, el Procurador de Menores presentó una moción de reconsideración. Alegó que la falta imputada a los menores era una de naturaleza grave, clasificada Clase III por la Ley de menores y, como tal, inelegible para un programa de desvío o medida dispositiva nominal. Sostuvo que en vista de ello, referir el caso al proceso de mediación no cumpliría con el propósito del Reglamento de métodos alternos para la solución de conflictos ni con el fin de la Ley de menores de proveer tratamiento y supervisión al menor a través de una medida de libertad condicional o custodia. El Tribunal de Primera Instancia denegó la moción de reconsideración.

---

[80] La Regla 7.04 del Reglamento de métodos alternos para la solución de conflictos establece: "el tribunal podrá referir **cualquier** caso que tenga ante su consideración, o parte del mismo, a mediación, ya sea por iniciativa propia o a solicitud de alguna de las partes". 4 L.P.R.A. Ap. XXIX R. 7.04. (Énfasis suplido).

En vista de lo anterior, la Procuradora General presentó un recurso de revisión ante el Tribunal de Apelaciones. Dicho foro revocó la determinación del Tribunal de Primera Instancia. Concluyó que según las disposiciones de la Ley de menores, por ser la falta imputada a los menores C.L.R. y A.V.L. una de Clase III, éstos no podrían ser referidos a un procedimiento de desvío. En consecuencia, devolvió el caso al foro de instancia para la continuación del procedimiento ordinario.

Inconformes con este resultado, C.L.R. y A.V.L. presentaron oportunamente sendos recursos de revisión ante nuestra consideración. Solicitaron además la paralización de los procedimientos a nivel de instancia mediante sus respectivas mociones de auxilio de jurisdicción. El 21 de abril de 2009 emitimos dos resoluciones mediante las cuales denegamos la expedición de cada uno de los recursos. Sin embargo, ante una oportuna moción de reconsideración presentada por el menor C.L.R., el 8 de mayo de 2009 ordenamos la paralización de los procedimientos y le concedimos a la Procuradora General un término de quince (15) días para que mostrara causa por la cual no debíamos expedir el auto y revocar la determinación del Tribunal de Apelaciones. El 11 de mayo de 2009 adoptamos el mismo curso de acción en relación con la moción de

reconsideración presentada por el menor A.V.L. Además, ordenamos la consolidación de los casos.

El 26 de mayo de 2009, la Procuradora General compareció mediante su escrito en cumplimiento de nuestra orden de mostrar causa. Posteriormente, el 29 de mayo de 2009, autorizamos la intervención de los profesores Carlos Del Valle Cruz y Francis Daniel Nina Estrella como amigos de la corte.[81] Habiendo éstos comparecido mediante escrito, concedimos un término a la Procuradora General, según solicitado, para expresar su posición en relación con el mismo.

## II.

En la Opinión emitida durante el día de hoy, el Tribunal resuelve que la mediación como método alterno de solución de conflictos no está disponible para casos iniciados al amparo de la Ley de menores. En primer lugar, la mayoría sostiene que el Reglamento de métodos alternos para la solución de conflictos emitido por este Tribunal, 4 L.P.R.A. Ap. XXIX (en adelante el Reglamento de métodos alternos), indica que dichos métodos sólo están disponibles para casos civiles y criminales, sin hacer mención expresa de los casos iniciados al amparo

---

[81] Accedimos a la petición de los Profesores Nina Estrella y del Valle Cruz por estimar que se cumplían a cabalidad los requisitos que hemos dispuesto para considerar una solicitud de esta naturaleza, para un caso como éste de carácter novel. Su comparecencia abona a que este Tribunal se encuentre "mejor informado para hacer la más cumplida justicia." *Pueblo ex rel L.V.C.*, 110 D.P.R. 114, 129 (1980). *Véase además*, Regla 43 del Reglamento de este Tribunal. 4 L.P.R.A. Ap. XXI-A.

de la Ley de menores. Esta omisión denota, según la mayoría, la intención de excluir a los procesos de la Ley de menores del alcance de la regulación de los métodos alternos de solución de conflictos.

Por otro lado, la mayoría arguye que la Ley de menores tiene un enfoque ecléctico -la habilitación o rehabilitación del menor imputado de falta y la exigencia de responsabilidad a éste por sus actos- lo cual no se cumple a través del proceso de mediación regulado por el Reglamento de métodos alternos. Entiende la mayoría que el fin del proceso de mediación instituido en el Reglamento de métodos alternos es impartir justicia en una forma más eficiente, rápida y económica y no necesariamente cumplir los propósitos de la Ley de menores.

Por último, aunque la mayoría reconoce que la mediación penal podría llegar a ser "un instrumento de gran beneficio en [el] área de asuntos de menores en Puerto Rico", establece que actualmente no es aplicable a dichos casos, pues los mediadores certificados por el Negociado de métodos alternos para la solución de conflictos (en adelante Negociado de métodos alternos) carecen de la capacidad para lidiar con procesos de delincuencia juvenil, ya que no están adiestrados específicamente en esa área.

Como estableceré a continuación, ninguna de las razones aducidas por la mayoría sustentan la conclusión

de que la mediación no es un método alterno disponible para la resolución de casos iniciados al amparo de la Ley de menores. Lo que denota la posición del Tribunal, por el contrario, es una interpretación restrictiva del Reglamento, disociada de la política pública establecida por este Tribunal en la regla 1.01. Igualmente, revela una visión distorsionada de los métodos alternos de solución de conflictos, especialmente del proceso de la mediación. Por último, pero no menos importante, se menosprecia la capacidad de los mediadores certificados por el Negociado de métodos alternos para llevar a cabo su labor, así como la capacidad de los jueces asignados a la Sala de Asuntos de Menores que discrecionalmente refieren dichos casos a la mediación. Veamos.

**III.**

**A.**

Como sabemos, los menores son personas que no han alcanzado su pleno desarrollo y madurez mental, por lo que no están sujetos a responder penalmente. *Pueblo en interés del menor A.L.G.V.*, res. 8 de mayo de 2007, 2007 T.S.P.R. 85, 170 D.P.R. \_\_\_\_. La Ley de menores actual adoptó "un enfoque ecléctico de acción e intervención en el cual se armoniza la responsabilidad de *parens patriae* del Estado, en cuanto a la rehabilitación de los ofensores, con el deber de éstos de responder por sus actos". *Pueblo en interés del menor G.R.S.*, 149 D.P.R. 1, 11 (1999). Ello, sin desatender la responsabilidad

del Estado de velar por la seguridad de la sociedad en general. *Pueblo v. Suárez Alers*, res. 11 de mayo de 2006, 2006 T.S.P.R. 83, 167 D.P.R. ____.

Como parte de la Exposición de Motivos de la Ley de menores, la Asamblea Legislativa expresó que:

> Esta ley adopta como marco filosófico del Sistema de Justicia Juvenil, el **humanismo** dentro de un enfoque ecléctico de acción e intervención, donde se compatibilicen la propuesta rehabilitadora y el poder y responsabilidad posible inherente al Estado de brindarle toda oportunidad rehabilitativa, así como exigirle al menor un "quantum" de responsabilidad para dirigir sus actos y responder por éstos. . . .[E]sta ley incorpora los derechos básicos que se han ido extendiendo al ámbito juvenil con el propósito de garantizar un procedimiento **justo, rápido** y **eficaz** sin que por ello se altere el carácter especial del proceso.
>
> …
>
> Toda ayuda al menor, que propenda a su rehabilitación, **debe concientizarlo de la importancia del acto cometido llevándolo a percatarse de éste, sus implicaciones, la responsabilidad individual y comunitaria envuelta, donde se propicie a su vez respeto a la ley existente.**

Exposición de Motivos, Ley 88 del 9 de julio de 1986, 34 L.P.R.A. secs. 2201-2238. (Énfasis suplido.)

Así pues, surge claramente de la Exposición de Motivos de la Ley de menores que el propósito del legislador al aprobar dicha ley fue adoptar como marco filosófico el *humanismo*, es decir, el enaltecimiento de la dignidad humana por medio de la integración de los valores humanos de más alto calibre al trato de los asuntos de menores, a través de un procedimiento que fuera *justo*, *rápido* y *eficaz*.  En dicho proceso, el

menor debe ser concientizado de la importancia del acto antijurídico en que ha incurrido de manera que éste asuma la responsabilidad que implican sus acciones y se propicie el respeto a la ley existente.

Como parte del reconocimiento de la Ley de menores de que éstos no responden penalmente, el artículo 37 (a) especifica que "[l]os procedimientos y las órdenes o resoluciones del juez bajo esta ley no se considerarán de naturaleza criminal". Basados en el texto de la ley, es que en innumerables ocasiones hemos definido los procedimientos al amparo de la Ley de menores como unos de carácter **civil** *sui géneris*. *Pueblo en interés del menor K.J.S.R.* res. 6 de noviembre de 2007, 2007 T.S.P.R. 194, 172 D.P.R. \_\_\_\_ (2007); *Pueblo en interés del menor A.L.G.V.*, *supra*; *Pueblo v. Suárez Alers, supra*; *Pueblo en interés del menor G.R.S.*, *supra* en la pág. 10; *Pueblo en interés del menor R.H.M.*, 126 D.P.R. 404, 424 (1990). Así, los casos iniciados al amparo de la Ley de menores siguen siendo casos *civiles*, con ciertas particularidades que le imprimen un carácter *sui generis*.

Siendo los casos de asuntos de menores de naturaleza civil, debemos auscultar si la mediación, como un método alterno de solución de conflictos, está disponible para la dilucidación de éstos. Al encaminarnos en esa tarea, debemos tener presente los propósitos y objetivos de la Ley de menores de proveer

un procedimiento justo, rápido y eficaz en el cual el menor reconozca y asuma su responsabilidad. Igualmente, debemos examinar la naturaleza de la mediación y la política pública establecida por este Tribunal en relación con los métodos alternos de solución de conflictos en nuestro ordenamiento.

**IV.**

**A.**

En términos generales y sin ánimo de agotar las distintas acepciones del concepto, la mediación puede ser descrita como un proceso mediante el cual las partes, con la ayuda de un tercero neutral, aíslan los conflictos entre sí con el fin de desarrollar alternativas y, en última instancia, forjar un acuerdo consensual que satisfaga sus necesidades. J. Folberg & A. Taylor, *Mediation: a comprehensive guide to resolving conflicts*, Primera Ed., California, Jossey-Bass Publishers, 1984, pág. 7. *Véase además*, M.E. Negrón Martínez y otros, *Un Modelo Puertorriqueño de Mediación de Conflictos*, Primera Ed., Puerto Rico, Lexis Nexis de Puerto Rico, 2001, pág. 12. Con la asistencia de dicho interventor neutral, los participantes de los procesos de mediación trasforman el conflicto mediante la reconciliación de los intereses que les vinculan. D. Nina, *Mediación: Teoría y Práctica*, Primera Ed., Puerto Rico, Ed. Situm, 2006, págs. 56-57. Dicha

reconciliación se logra, a su vez, mediante la negociación. *Id*. en la pág. 57.

Varios principios guían los procesos de mediación. Entre éstos se destacan la soberanía, voluntad e interdependencia de las partes y la confidencialidad del proceso. *Id*. en las págs. 57-58. Se trata de lograr un fin dual de reducir conflictos y resolver disputas. J. Folberg & A. Taylor, *op. cit.*, en la pág. 8. En relación con el elemento de interdependencia, el profesor Nina expresa que "el vínculo que une a las partes en conflicto por encima del conflicto en sí mismo, es un factor primordial para entender el proceso de mediación". D. Nina, *op cit*., en la pág. 59.

La índole transformativa de los procesos de mediación es particularmente evidente en los casos de naturaleza penal. Como sabemos, nuestro ordenamiento en materia penal se funda sobre una teoría punitiva según la cual la infracción de la ley penal constituye una ofensa a la sociedad que le corresponde al Estado encausar y, de ser necesario, castigar. L.F. Gordillo Santana, *La Justicia Restaurativa y la Mediación Penal*, Primera Ed., España, 2007, pág. 184. En dichos procedimientos penales tradicionales las partes son el Estado y el ofensor, mientras que la víctima asume un rol pasivo, muchas veces como testigo. M. Gertz, *The Road Less Traveled: Using ADR to Help Reform First-Time*

*Juvenile Offenders*, 8 Cardozo J. Conflict Resol. 339, 351-52 (Fall 2006).

La teoría restaurativa, por el contrario, propone un cambio en dicho paradigma y se enfoca en el daño causado a la víctima y en cómo enmendarlo. M. Liebmann, *Restorative Justice: How It Works*, Primera Ed., Pennsylvania, Jessica Kingsley Publishers, 2007, pág. 25. De conformidad con tal principio, los procesos de mediación alternativos al encausamiento penal persiguen que tanto el ofensor como la víctima asuman roles activos en la negociación. El fin de dicha negociación es, a su vez, reparar el daño material y psicológico a la víctima, mientras se hace al ofensor consciente del impacto de su conducta en la persona de ésta. *Id*. en la pág. 26. Así, el objetivo de los procesos de mediación es que el ofensor *asuma responsabilidad por sus actos, adquiera la oportunidad de reparar el daño causado y, como resultado, corrija su conducta con el propósito de evitar reincidir en la misma*. *Id*. en las págs. 26-27. La víctima, por su parte, ganaría la oportunidad de dialogar con el ofensor y recibir una disculpa de parte de éste, además de la restitución de su propiedad de ser necesaria. *Id*. en la pág. 28.

Los procesos de mediación han probado ser de gran utilidad en casos de delincuencia juvenil, particularmente en aquellos de primeros ofensores. Además de ser más rápido e informal y, como tal, menos

costoso, los comentaristas esbozan que las ventajas del proceso de mediación consisten en que a través de éste el menor ofensor adquiere consciencia de sus actos y del daño causado a su víctima y se responsabiliza por el mismo. S. A. Beauregard, *Court-Connected Juvenile Victim-Offender Mediation: An Appealing Alternative for Ohio's Juvenile Delinquents*, 13 Ohio St. J. on Disp. Resol. 1005, 1012-13 (1998). Al igual que en los procesos de mediación penal, en la mediación de asuntos de menores los ofensores tienen la oportunidad de reconocer o disculparse por sus acciones, entender la dimensión humana de su comportamiento, valorar a la víctima como un igual y aprender los costos que conlleva la violación de los derechos de los demás. *Id*. Esto, a su vez, causa que éstos sean menos propensos a reincidir. *Id*. *Véase además*, Hon. R. Bennet Burkemper, Jr., *Restorative Justice in Missouri's Juvenile System*, 63 J. Mo. B. 128 (2007).

En suma, los procesos de mediación en el área de asuntos de menores han probado ser una herramienta útil y beneficiosa para las partes involucradas en el conflicto, tanto la víctima como el menor. A través de dicho método, se alcanzan igualmente los propósitos de las leyes que regulan los casos de asuntos de menores y delincuencia juvenil, sin necesariamente utilizar la teoría punitiva tradicional. Esta nueva perspectiva habilita al ofensor a reconocer el valor humano de la

víctima a través de la consideración de las consecuencias de sus actos sobre ésta, además de permitir que éste asuma responsabilidad por sus acciones a través del arrepentimiento y la disculpa a la víctima por el mal causado.

**B.**

Los primeros esfuerzos formales en Puerto Rico para la implantación de métodos alternos de solución de conflictos comenzaron a principio de la década de 1980 cuando la Asamblea Legislativa, a través de la Ley número 19 de 22 de septiembre de 1983, asignó fondos del Tesoro del Estado Libre Asociado de Puerto Rico para estos fines e instruyó a este Tribunal a adoptar, "en el ejercicio de su poder de reglamentación general", las reglas necesarias para la operación de los programas que servirían como centros informales para la resolución de disputas. 4 L.P.R.A. secs. 532-532a. En relación con la naturaleza de los casos que podrían ser referidos a los centros cuya creación se autorizó mediante la Ley número 19, *supra*, se estableció lo siguiente: "los centros o programas que se establezcan proveerán para la pronta resolución de determinados asuntos de naturaleza civil o criminal de manera informal, sencilla y sin la utilización de procedimientos adversativos". 4 L.P.R.A. sec. 532c.

En cumplimiento con el mandato de la Ley número 19, *supra*, este Tribunal aprobó mediante resolución del 25

de junio de 1998, el Reglamento de métodos alternos, *supra*, posteriormente enmendado mediante resolución del 4 de marzo de 2005. *Véanse*, *In re: Aprobación y Vigencia del Reglamento de Métodos Alternos para la Solución de Conflictos*, 1998 T.S.P.R. 79; *Enmiendas al Reglamento de Métodos Alternos para la Solución de Conflictos*, 164 D.P.R. 45 (2005). Éste constituyó el primer acto formal para regular la práctica de la mediación en nuestra jurisdicción. D. Nina, *op cit.*, pág. 5.

El Reglamento de métodos alternos, *supra*, declara como política pública de la Rama Judicial "fomentar la utilización de mecanismos complementarios al sistema adjudicativo tradicional con el fin de impartir justicia en una forma más eficiente, rápida y económica". 4 L.P.R.A. Ap. XXIX, R. 1.01. Para implantar dicha política pública, el Reglamento dispone la creación del Negociado de métodos alternos y reconoce tres métodos alternos de solución de conflictos, a saber: la mediación, el arbitraje y la evaluación neutral. 4 L.P.R.A. Ap. XXIX, R. 2.01-2.02.

En relación con la controversia ante nuestra consideración, el Reglamento de métodos alternos define la mediación como un "proceso de intervención, no adjudicativo, en el cual un [interventor neutral] ayuda a las personas en conflicto a lograr un acuerdo que les resulte mutuamente aceptable". 4 L.P.R.A. Ap. XXIX, R.

1.03(c). La Regla 7.01 añade que "la mediación tiene como propósitos promover la participación de personas en la solución de sus conflictos y que las partes involucradas asuman responsabilidad en el cumplimiento de los acuerdos". 4 L.P.R.A. Ap. XXIX, R. 7.01 (b).

De conformidad con las disposiciones de la Ley número 19, *supra*, y de acuerdo con la teoría de la mediación, el Reglamento establece un proceso de mediación voluntario y confidencial. Así, una vez referida una controversia a mediación, las partes sólo vienen compelidas a comparecer a una sesión inicial de orientación, siendo potestad de éstas decidir voluntariamente si se someten al proceso. 4 L.P.R.A. Ap. XXIX, R. 3.05. De ello ocurrir y en caso de que las partes logren un acuerdo, el mismo será obligatorio, pudiendo ser ejecutable entre las partes como cualquier otro contrato escrito. 4 L.P.R.A. Ap. XXIX, R. 5.02. No obstante, cuando es el Tribunal el que refiere el caso a mediación, como ocurrió en la controversia ante nuestra consideración, el mediador o mediadora, luego de dar por terminado el proceso, debe informar el acuerdo alcanzado al Tribunal conforme la regla 5.01.[82] 4 L.P.R.A. Ap. XXIX, R. 7.11.

---

[82] La regla 5.01 del Reglamento establece que:

Regla 5.01. Acuerdos

(a) Todos los acuerdos tomados dentro de un método alterno para la solución de conflictos deberán constar por escrito.

De otra parte, la potestad discrecional de los tribunales para determinar si referir un caso a un proceso de mediación se canaliza a través del inciso (b) de la Regla 7.02 el cual establece que "en los casos pendientes ante el tribunal, éste determinará si un caso es adecuado para referirlo a mediación. El tribunal, además, podrá acoger peticiones de las partes para que un caso sea referido a mediación". 4 L.P.R.A. Ap. XXIX R. 7.02(b). Al proponer el texto citado, el Secretariado de la Conferencia Judicial comentó en su informe que la Regla 7.02 destaca que "el tribunal **retendrá siempre la prerrogativa de referir un caso al proceso de mediación…**". Secretariado de la Conferencia Judicial, *Medios Alternos de Resolución de Disputas,*

---

(b) Cuando las partes lleguen a un acuerdo o a una transacción dentro de un método alterno para la solución de conflictos, o como resultado del mismo, informarán por escrito de tal circunstancia al tribunal.
(c) Los términos específicos de los acuerdos deberán notificarse por escrito al tribunal, a menos que las partes acuerden lo contrario. No obstante, cuando el asunto en controversia esté revestido de un alto interés público, las partes tendrán que divulgar al tribunal el contenido del acuerdo o la transacción. En caso de que el acuerdo o la transacción afecte el bienestar o los derechos de menores o incapacitados, se seguirá el tramite dispuesto por ley.

A base de dicha regla, el escrito del *amicus curiae* presentado por los Profesores Nina Estrella y del Valle Cruz arguye que la práctica que se sigue en las Salas de Asuntos de Menores es que, una vez se llega a un acuerdo en el proceso de mediación, las partes, incluyendo a la Procuradora de Menores, comparecen ante el juez para que éste apruebe dicho acuerdo. De no aprobarse éste, el proceso sigue su curso normal según las Reglas de Procedimiento para Asuntos de Menores.

*Informe Final y Reglamento*, junio de 1996, pág. 88. (Énfasis suplido).   En ese mismo tenor, la Regla 7.04 es clara al establecer que "el tribunal podrá referir **cualquier caso que tenga ante su consideración**, o parte del mismo, a mediación, ya sea por iniciativa propia o a solicitud de alguna de las partes".   4 L.P.R.A. Ap. XXIX R. 7.04.   (Énfasis suplido).

Ahora bien, tal discreción no se ejerce en un vacío.   El inciso (c) de la Regla 7.02 establece que al determinar si referir un caso a mediación, el tribunal debe utilizar los criterios establecidos por las Reglas 3.01 y 3.02.   La primera de éstas es de particular importancia para la controversia ante nuestra consideración por lo que conviene citarla en toda su extensión:

> (a)  Al seleccionar los casos para ser referidos a métodos alternos para la solución de conflictos, el tribunal deberá considerar los factores siguientes:
>
> (1) La naturaleza del caso.
> (2) La naturaleza de la relación entre las partes.
> (3) La disposición de las partes para negociar.
> (4) La posibilidad de que la litigación afecte adversamente la relación.
> (5) Los riesgos a la integridad física de los participantes o del interventor o de la interventora neutral.
> (6) La necesidad de proveer remedios de emergencia antes del referimiento.
> (7) Los costos y riesgos de la litigación.

4 L.P.R.A. Ap. XXIX, R. 3.01.

El primero de los criterios enumerados por la regla 3.01 necesariamente nos refiere, a su vez, a la regla 7.02, la cual enumera los casos elegibles para ser referidos a mediación.  En su inciso (a), dicha regla expone que "serán elegibles para mediación los casos **civiles** y los casos criminales de naturaleza menos grave, que puedan transigirse de acuerdo con las Reglas de Procedimiento Criminal". (Énfasis suplido).  Se trata de una norma general de elegibilidad.  Secretariado de la Conferencia Judicial, *Medios Alternos de Resolución de Disputas, Informe Final y Reglamento*, *supra*, en la pág. 89.

La regla 7.03 complementa tal disposición al excluir expresamente de los procesos de mediación los casos criminales que no sean transigibles bajo las Reglas de Procedimiento Criminal; los casos que impliquen una reclamación de derechos civiles o de alto interés público, excepto cuando medie el consentimiento explícito de las partes; y aquellos en que una parte no sea capaz de proteger efectivamente sus intereses durante la negociación.  4 L.P.R.A. Ap. XXIX R. 7.03(a)-(c).  La exclusión de estos tipos de casos responde a que se entiende que los mismos no son apropiados para ser referidos a mediación ya que "implican unos riesgos o conllevan unos resultados que requieren la intervención del tribunal".  Secretariado de la Conferencia Judicial, *Medios Alternos de Resolución de*

*Disputas, Informe Final y Reglamento*, *supra*, en la pág. 89.

Al proponer la regla 3.01 antes citada, el Secretariado de la Conferencia Judicial añadió que "la enumeración que se ha hecho en este comentario es meramente ilustrativa y no impide que los jueces se abstengan de referir casos pertenecientes a las categorías aquí mencionadas o **que refieran casos de otras categorías que no estén expresamente excluidas por estas reglas**". Secretariado de la Conferencia Judicial, *Medios Alternos de Resolución de Disputas, Informe Final y Reglamento*, *supra*, en la pág. 61. (Énfasis suplido). Es decir, que la lista de casos elegibles para participar de un proceso de mediación no es taxativa sino que reside en la discreción del tribunal referir controversias ante su consideración a procesos de mediación, siempre y cuando las mismas no estén excluidas expresamente de dicho procedimiento.

**V.**

**A.**

Como establecimos anteriormente, mediante la Ley número 19 el legislador dispuso que, en general, tanto los casos de naturaleza civil como los criminales serían elegibles para participar de los métodos alternos de solución de conflictos. Este Tribunal, por su parte, en ejercicio de su poder de reglamentación y dentro de los parámetros dispuestos por el legislador mediante la Ley

número 19, estableció los criterios que limitarían la discreción de los foros judiciales al ejercer su prerrogativa de referir los casos a métodos alternos de solución de conflictos.

Si bien el Reglamento de métodos alternos adoptado no provee expresamente para el referido de los casos de menores a procesos de mediación, tampoco lo prohíbe. Por el contrario, el Reglamento de métodos alternos provee para el referido de casos de naturaleza civil, categoría a la que pertenecen los casos de asuntos de menores. Igualmente, al examinar la regla 7.03 vemos que ésta no excluye los casos de asuntos de menores de ser referidos al método alterno de la mediación. Nada hay en el historial de la aprobación del reglamento que apunte a que hubo una intención expresa de dejar fuera de su aplicación las disputas que involucren a menores. Ante la ausencia de tal exclusión, la práctica, según lo consignan los datos oficiales de los centros de mediación de conflictos, es que que se han referido numerosos casos de menores a procesos de mediación. El informe de datos agregados para el año fiscal 2005-06 evidencia que de los 13,611 casos atendidos por los centros de mediación durante dicho año, 11,123 fueron "referidos de la comunidad". En dicho renglón se hizo constar que los "referidos de la comunidad" incluían referidos del Procurador de Menores. *Véase*, Negociado de Métodos Alternos de Solución de Conflictos, *Datos*

*Agregados de los Centros de Mediación de Conflictos para el Año Fiscal 2005-06.*[83]

Como hemos apuntado, la regla 7.02 del Reglamento de métodos alternos establece una norma general de elegibilidad y deja a discreción del tribunal la determinación de referir a un proceso de mediación "cualquier caso que tenga ante su consideración", siempre que el mismo no pertenezca a una de las categorías excluidas en virtud de la regla 7.03. No estando los casos de menores expresamente excluidos por la regla 7.03 del Reglamento de métodos alternos,[84] es preciso concluir que éstos son elegibles para ser referidos a un proceso de mediación.

Es menester destacar, no obstante, que el hecho de que los casos de asuntos de menores sean elegibles para ser referidos a un proceso de mediación, no implica necesariamente que todos los casos sometidos a dicha jurisdicción sean apropiados para ser referidos a ese método alterno. La decisión de referir un caso de menores al proceso de mediación queda en la sana

_____

[83] Disponible en http://www.ramajudicial.pr/NegMed/Centros_Mediacion/datos/CMC05-06.pdf

[84] Nótese que, contrario al Capítulo 7 sobre Mediación, los casos de menores están expresamente excluidos de los procesos de arbitraje regulados por el Capítulo 8 del Reglamento de métodos alternos para la solución de conflictos. 4 L.P.R.A. Ap. XXIX R. 8.03. Tal exclusión expresa derrota el argumento de la Procuradora General a los efectos de que a pesar de ser adoptado una década después de la vigencia de la Ley de menores, el Reglamento de métodos alternos de solución de conflictos no contempló la misma.

discreción del juez de la Sala de Asuntos de Menores, guiado por los criterios esbozados en la regla 3.01. Así, la naturaleza del caso, la naturaleza de la relación entre las partes, la disposición de éstas a someterse al proceso y los costos y riesgos del proceso ordinario, entre otros factores enumerados en la regla 3.01, unidos a la capacidad y experiencia en esta área de los jueces y juezas de las Salas de Asuntos de Menores, le permitirán determinar cuáles de éstos casos son apropiados para ser referidos a la mediación.

El referido de casos de asuntos de menores al método alterno de la mediación, además de estar fundamentado en el Reglamento y en la política pública de este Tribunal, es cónsono con los propósitos de la Ley de menores en nuestra jurisdicción, particularmente en cuanto a fomentar la habilitación y rehabilitación del menor mientras se le exige responsabilidad por sus actos. Como vimos, dichos principios son los que inspiran los procesos de mediación en el contexto de casos de delincuencia juvenil. Y es que, sin duda, la naturaleza del proceso de mediación lo hace idóneo para la dilucidación de ciertos conflictos en que se vean involucrados menores, particularmente si se trata de una primera infracción. "Cuando, como en la materia, se tiene claro que la solución informal del conflicto es mucho más adecuada y la formalizada puede perjudicar el fin último perseguido, es comprensible y adecuado, […]

procur[ar] habilitar cauces para reconducir lo antes posible la cuestión a ámbitos de solución de conflictos más informales que los procesales." J. Cuello Contreras, *El nuevo Derecho penal de menores*, Cuadernos Civitas, Madrid, 2000, pág. 90.

**B.**

A la luz de lo antes expuesto, es forzoso concluir que erra la mayoría al resolver que el método alterno de la mediación es inaplicable a los casos de asuntos de menores. En primer lugar, el Reglamento sí contempla el referido de ese tipo de caso a la mediación, pues todos los casos civiles son, en principio, sujetos a ser referidos a dicho método alterno. Aun si, para propósitos de argumentación, expresáramos que el Reglamento de métodos alternos no provee para el referido de casos de asuntos de menores a la mediación, lo que es claramente erróneo, este Tribunal podría así mandatarlo. Después de todo, dicho reglamento fue aprobado al amparo del poder general de reglamentación del Tribunal sobre la administración de la justicia. Por lo tanto, si este Tribunal entendiera apropiado el referido de casos de asuntos de menores al proceso de mediación, podría así disponerlo, de ser necesario. Así pues, no es una cuestión de poder, sino de querer.[85]

---

[85] Inclusive, el Proyecto del Senado 1108 de 8 de septiembre de 2009 así lo reconoce:

> Esta Asamblea Legislativa reconoce que el Estado debe ofrecer a los menores nuevas

Por otro lado, no hay duda que el modelo de mediación transformativa que utiliza como base la justicia restaurativa cumple a cabalidad con los propósitos y objetivos de la Ley de menores. En dicho proceso el menor ofensor adquiere consciencia de sus actos y del daño causado a su víctima y se responsabiliza por el mismo, a través de un procedimiento justo, rápido y eficaz, tal y como lo establece la Exposición de Motivos de dicha ley.

En la Opinión del Tribunal se hace hincapié en la alegada necesidad del castigo para cumplir con la rehabilitación del menor, por lo que el proceso de mediación, según la mayoría, no cumple los propósitos de la Ley de menores. No obstante, dicha visión policíaca y punitiva de la ley soslaya el hecho de que a través de la mediación es posible "concientizar [al menor] de la importancia del acto cometido llevándolo a percatarse de éste, sus implicaciones, la responsabilidad individual y comunitaria envuelta",[86] sin necesariamente someterlo a una medida dispositiva condicional por un término de

---

alternativas de tratamiento que propicien la rehabilitación y subsiguiente adaptación del menor en la sociedad. **Después de todo, como parte de la discreción judicial sobre la forma de adjudicar un caso, muy bien podría determinarse que el mecanismo más acertado y conveniente es referir el mismo a mediación en lugar de continuar el trámite tradicional.** (Énfasis suplido)

De esta manera, la Asamblea Legislativa reconoce el poder que la mayoría se niega a utilizar.

[86] *Véase* Exposición de Motivos, Ley 88 del 9 de julio de 1986.

hasta cuatro (4) años o de custodia en una institución juvenil por un término de hasta tres (3) años. No podemos olvidar que el marco filosófico de la Ley de menores es el humanismo, por lo que se deben examinar vías alternas "fuera del órgano judicial para brindar la atención oportuna" a estos jóvenes. *Véase* Exposición de Motivos, Ley 88 del 9 de julio de 1986. Igualmente, en la medida en que a través del proceso de mediación transformativa el menor reconoce su falta y el daño causado, lo que ha sido demostrado reduce la reincidencia de estos transgresores, se cumple con el fin del Estado en garantizar un orden social y proteger el bienestar de la comunidad.

Por último, el argumento de la mayoría sobre la alegada falta de adiestramiento en esta área de los mediadores certificados por el Negociado de métodos alternos deja de lado que a través del Reglamento de certificación y educación continua relacionado con los métodos alternos para la solución de conflictos[87] se establece un esquema detallado de requisitos que debe cumplir todo aspirante a ser certificado como mediador. Dicho esquema garantiza que los mediadores certificados tienen la preparación necesaria para servir como interventor neutral en cualquier conflicto que se le

---

[87] Dicho reglamento fue aprobado por el Negociado de métodos alternos al amparo de la regla 2.02 del Reglamento de métodos alternos. Disponible en http://www.ramajudicial.pr/NegMed/Recursos/Reglamentos/docs/RegCertificacion_1999.pdf

presente, incluyendo casos de asuntos de menores. Además, no debe descartarse la experiencia que han adquirido estos profesionales en los más de diez años de haberse establecido el Reglamento de métodos alternos, en el transcurso de los cuales, continuamente, se han referido casos de asuntos de menores a la mediación. Así surge de los relatos de los Profesores Nina Estrella y del Valle Cruz a través del escrito de *amicus curiae* conjuntamente presentado, e igualmente del texto de la Dra. Mildred Enid Negrón Martínez, citado anteriormente.[88]

Así pues, establecida la aplicabilidad de los procesos de mediación a los casos de asuntos de menores, nos resta examinar los hechos del presente caso para auscultar si erró el Tribunal de Apelaciones al revocar la determinación del Tribunal de Primera Instancia de referir el presente caso a un proceso de mediación.

---

[88] El escrito del *amicus curiae* destaca que durante el período en el cual el Profesor Nina Estrella dirigió la Unidad de Mediación y Arbitraje de la Facultad de Derecho Eugenio María de Hostos, entre el año 2004 al 2007, atendió cerca de 300 casos a través del proceso de mediación, de los cuales alrededor del 40% se trataba de casos de asuntos de menores. Específicamente, entre el año 2006 y 2007, indica que cerca del 50% de dichos casos eran referidos por la Oficina de la Procuradora de Menores de Mayagüez. Por otro lado, la Dra. Negrón Martínez asegura que su experiencia ha sido que los Centros de Mediación en el país "cubren un amplio espectro de controversias de familia, comunales, comerciales, **escolares**, así como asuntos criminales menos graves y **casos de menores involucrados en controversias que están bajo la jurisdicción de la Sala de Menores del Tribunal de Primera Instancia**". Negrón Martínez y otros, *Un Modelo Puertorriqueño de Mediación de Conflictos*, *op. cit.*, pág. 20. (Énfasis suplido).

**C.**

Como adelantáramos en la relación de hechos, en este caso se presentaron en interés de los menores C.L.R. y A.V.L. sendas quejas en las que se les imputó haber infringido el artículo 198 del Código Penal. De un análisis de los criterios de la regla 3.01 del Reglamento de métodos alternos surge que el presente caso, además de elegible, es también apropiado para ser referido a un proceso de mediación.

Primeramente, los menores involucrados y sus padres, incluyendo los padres de la víctima, expresaron ante el Tribunal de Primera Instancia su conformidad con el referido del caso al proceso de mediación. Así, tanto la víctima como el ofensor deseaban solucionar su conflicto a través del proceso de la mediación. En cuanto a la naturaleza del caso,[89] es preciso tener presente que lo que se imputa a los menores recurrentes es la apropiación de siete dólares ($7.00) pertenecientes a una compañera de estudio. Se trata de

---

[89] La Procuradora General arguye, haciéndose eco de lo resuelto por el Tribunal de Apelaciones, que por este caso tratarse de la imputación de una falta Clase III, la mediación no está disponible, pues ese tipo de falta no es susceptible de enviarse a un procedimiento de desvío. Dicha postura soslaya el hecho de que el procedimiento de desvío al amparo de la Ley de menores y el proceso de mediación dispuesto por el Reglamento de métodos alternos son de distinta naturaleza y se encuentran regulados por estatutos independientes. La clase de falta imputada es un factor más que se debe sopesar al momento de referir un caso al proceso de mediación, sin que una clasificación específica impida, por sí sola, la dilucidación del caso a través de dicho método alterno.

un conflicto nacido en el contexto escolar, en el cual los menores seguirán interrelacionándose aún con posterioridad a la resolución del presente caso. Aunque la conducta imputada a los recurrentes es constitutiva de falta, en el balance de intereses es preferible brindar a éstos una oportunidad de reconocer lo errado de su proceder y asumir la responsabilidad por sus actos a través del proceso de la mediación, sin someterlos a un procedimiento estigmatizador y de naturaleza punitiva como pudiese resultar el procedimiento ordinario.

Ante estos hechos y siendo la presente la primera vez que C.L.R. y A.V.L. se exponen a un procedimiento ante el Tribunal de Menores, es preciso concluir que las circunstancias del presente caso ameritan que se les brinde la oportunidad de solucionar este conflicto a través de la mediación. Nuestro sentido de justicia nos debería compeler a particularizar la controversia ante nuestra consideración y a sopesar que, a pesar de lo reprochable de la conducta imputada a C.L.R. y A.V.L., la misma no merece exponerlos de primera intención a la imposición de una medida dispositiva condicional o de custodia al amparo de las disposiciones de la Ley de menores. Si el proceso de mediación se ve interrumpido o no culmina satisfactoriamente, el caso revertiría al foro judicial para la continuación del procedimiento ordinario. En todo caso, el Tribunal examinará el acuerdo alcanzado, velando por que éste adelante los

intereses públicos implicados del bienestar del menor y la seguridad pública.

En conclusión, soy del criterio que analizadas las circunstancias del presente caso a la luz de los criterios de la regla 3.01 del Reglamento de métodos alternos, no abusó de su discreción el Tribunal de Primera Instancia al referirlo al proceso de mediación. Erró el Tribunal de Apelaciones al revocar dicho proceder. En consecuencia, revocaría la determinación del Tribunal de Apelaciones recurrida, y devolvería el presente caso para la continuación de los procedimientos de conformidad con lo aquí expuesto. Por no ser ese el curso seguido por la mayoría, respetuosamente disiento del dictamen emitido.


Anabelle Rodríguez Rodríguez
Juez Asociada